No. 24-40564

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

UNITED STATES OF AMERICA, EX REL, BROOK JACKSON,

*Plaintiff-Appellant,*

v.

UNITED STATES OF AMERICA,

*Intervenor Plaintiff - Appellee*

VENTAVIA RESEARCH GROUP, L.L.C.,

*Defendant-Appellee.*

On Appeal from the United States District Court
for the Eastern District of Texas, Beaumont Division
Case No. 1:21-CV-8, Judge Michael J. Truncale

BRIEF OF APPELLEE
VENTAVIA RESEARCH GROUP, L.L.C.

Stacy L. Brainin
  *Stacy.Brainin@haynesboone.com*
Andrew W. Guthrie
  *Andrew.Guthrie@haynesboone.com*
HAYNES AND BOONE, LLP
2801 N. Harwood Street, Suite 2300
Dallas, Texas 75201
Phone: (214) 651-5000

## CERTIFICATE OF INTERESTED PERSONS

**Case Number and Style**:  **24-40564**, *United States of America, ex rel, Brook Jackson v. United States of America, Ventavia Research Group, L.L.C.*

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

### I.    Relator - Appellant

- **Brook Jackson**

    <u>Appellate Counsel</u>

    Robert E. Barnes
       *robertbarnes@barneslawllp.com*
    Lexis Anderson
       *lexisanderson@barneslawllp.com*
    BARNES LAW
    700 S. Flower Street, Suite 1000
    Los Angeles, CA 90017
    Telephone: (310) 510-6211

    Warner Mendenhall
       *warner@warnermendenhall.com*
    MENDENHALL LAW GROUP
    190 North Union St., Suite 201
    Akron, OH 44304
    Telephone: (330) 535-9160

    Jeremy L. Friedman
       *jlfried@comcast.net*
    LAW OFFICE OF JEREMY L. FRIEDMAN
    2801 Sylhowe Road
    Oakland, CA 94602
    Telephone: (510) 530-9060

II.     **Intervenor - Appellee**

- **United States of America**

  <u>Appellate Counsel</u>

  Charles W. Scarborough
    *charles.scarborough@usdoj.gov*
  Sarah N. Smith
    *sarah.n.smith@usdoj.gov*
  U.S. DEPARTMENT OF JUSTICE
  950 Pennsylvania Avenue, N.W.,
  Washington, DC 20530
  Telephone: (202) 305-0173

  <u>Trial Counsel</u>

  James G. Gillingham
    *James.Gillingham@usdoj.gov*
  Damien M. Diggs [former]
  U.S. ATTORNEY'S OFFICE
  Eastern District of Texas
  110 N. College Avenue, Suite 700
  Tyler, TX 75702
  Telephone: (903) 510-9346

  Michael Wayne Lockhart
    *michael.lockhart@usdoj.gov*
  U.S. ATTORNEY'S OFFICE
  550 Fannin Street
  Beaumont, TX 77701
  Telephone: (409) 981-7940

  Erin Colleran
    *Erin.Colleran@usdoj.gov*
  Jamie Ann Yavelberg
  Andy J. Mao
  Brian M. Boynton [former]

U.S. DEPARTMENT OF JUSTICE
175 N St., NE
Washington, DC 20002
Telephone: (202) 532-5056

## III.    Defendant - Appellee

- **Ventavia Research Group, L.L.C.**

    Appellate Counsel

    Stacy Lee Brainin
      *Stacy.Brainin@haynesboone.com*
    Andrew W. Guthrie
      *Andrew.Guthrie@haynesboone.com*
    HAYNES AND BOONE, LLP
    2801 N. Harwood Street, Suite 2300
    Dallas, Texas 75201
    Telephone: (214) 651-5000

    Additional Trial Counsel

    Taryn M. McDonald
      *Taryn.McDonald@haynesboone.com*
    HAYNES AND BOONE, LLP
    2801 N. Harwood Street, Suite 2300
    Dallas, Texas 75201

    Ventavia has no parent corporation and no publicly held corporation
    owns 10% or more of its stock.

## IV.    Other defendants not appearing in this appeal

- **Pfizer, Inc.**

  <u>Trial Counsel</u>

  Carlton E. Wessel
  *Carlton.Wessel@us.dlapiper.com*
  DLA PIPER LLP (US)
  500 Eighth Street, NW
  Washington, D.C. 20004
  Telephone: (202) 799-4000

  Andrew J. Hoffman , II
  *Andrew.Hoffman@us.dlapiper.com*
  DLA PIPER LLP (US)
  2000 Avenue of the Stars, Suite 400, North Tower
  Los Angeles, CA 90067-4704
  Telephone: (310) 595-3000

  Meagan D. Self
  *Meagan.Self@us.dlapiper.com*
  DLA PIPER LLP (US)
  1900 N. Pearl St., Suite 2200
  Dallas, TX 75201
  Telephone: (214) 743-4500

  Jack P. Carroll
  *jpc@obt.com*
  ORGAIN, BELL & TUCKER, LLP
  470 Orleans St., Fourth Floor
  Beaumont, TX 77701
  Telephone: (409) 838-6412

  Tommy L. Yeates
  *tyeates@moorelandrey.com*
  MOORE LANDREY, LLP
  905 Orleans Street

Beaumont, TX 77701
Telephone: (409) 835-3891

- **ICON plc**

  Trial Counsel

  Elai Katz
   *ekatz@mwe.com*
  MCDERMOTT WILL & EMERY
  One Vanderbilt Ave
  New York, NY 10017
  Telephone: (212) 547-5791

  Scott L Davis
   *sdavis@spencerfane.com*
  SPENCER FANE LLP
  2200 Ross Avenue, Suite 4800 West
  Dallas, TX 75201
  Telephone: (214) 750-3610

  Tammy Roy
   *troy@cahill.com*
  Peter Linken [former]
  CAHILL GORDON & REINDEL LLP
  32 Old Slip
  New York, NY 10005
  Telephone: (212) 701-3720

  Jennifer N. Hinds
   *jennifer.hinds@huschblackwell.com*
  HUSCH BLACKWELL LLP
  300 S. Grand Avenue, Suite 1500
  Los Angeles, CA 90071
  Telephone: (213) 337-6550

Dated: April 28, 2025                    */s/ Andrew W. Guthrie*
                                          Andrew W. Guthrie
                                          **Attorney of record for Appellee Ventavia
                                          Research Group, L.L.C.**

## STATEMENT REGARDING ORAL ARGUMENT

Ventavia does not believe that oral argument is necessary to affirm the take-nothing judgment in this case—especially since that result arose primarily from the Government's discretionary decision to dismiss this meritless suit brought on its behalf. But because Relator requested oral argument, and to the extent the Court would find value in a live discussion of the issues, Ventavia will participate.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ...................................................1

STATEMENT REGARDING ORAL ARGUMENT ...........................................7

TABLE OF CONTENTS ................................................................................ 8

TABLE OF AUTHORITIES ...........................................................................10

ABBREVIATIONS ......................................................................................14

STATEMENT OF ISSUES PRESENTED ......................................................15

INTRODUCTION ......................................................................................16

STATEMENT OF THE CASE ......................................................................17

    A.    Relator briefly worked for Ventavia while it operated three
           test sites in the clinical trial for Pfizer's COVID vaccine. ..................17

    B.    Relator filed this suit claiming Pfizer's vaccine was a fraud;
           the Government declined to join the suit. ........................................19

    C.    Defendants moved to dismiss, and the Government filed a
           statement supporting dismissal; the district court
           dismissed the complaint in full for failure to state a claim.................21

    D.    When Relator amended to re-assert the same misguided
           theories, the Government opted to intervene and dismiss
           the claims asserted on its behalf. ....................................................23

SUMMARY OF THE ARGUMENT .................................................................26

ARGUMENT..............................................................................................28

I.    The district court properly dismissed all of Relator's causes of
    action under the False Claims Act..............................................................28

    A.    Dismissal was proper because the Government gave good
           grounds to intervene and dismiss this meritless case. ......................28

B.    Dismissal also would have been proper under Rules 12(b)(6) and 9(b) because Relator failed to state valid FCA claims against Ventavia or anyone else. .............................................29

II.    The district court also properly dismissed Relator's retaliation claims against Ventavia. ................................................. 39

A.    Relator did not sufficiently allege she was engaged in "protected activity" under the FCA. .................................................. 41

B.    Relator did not sufficiently allege that Ventavia knew she was engaged in protected activity. ....................................47

CONCLUSION AND PRAYER ........................................................ 51

CERTIFICATE OF SERVICE ............................................................52

ECF CERTIFICATION .......................................................................52

CERTIFICATE OF COMPLIANCE .................................................52

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Britt v. Grocers Supply Co.*,
  978 F.2d 1441 (5th Cir. 1992) ........................................................... 29

*United States ex rel. Colquitt v. Abbott Labs.*,
  2016 WL 80000 (N.D. Tex. Jan. 7, 2016) ........................................ 36

*D'Agostino v. ev3, Inc.*,
  845 F.3d 1 (1st Cir. 2016) ................................................................ 38

*Energy Coal v. CITGO Petroleum Corp.*,
  836 F.3d 457 (5th Cir. 2016) ..................................................... 44, 48

*Gilbert v. Donahoe*,
  751 F.3d 303 (5th Cir. 2014) ........................................................... 29

*United States ex rel. Harman v. Trinity Indus. Inc.*,
  872 F.3d 645 (5th Cir. 2017) ........................................ 32-33, 34, 35

*Hutchins v. Wilentz, Goldman & Spitzer*,
  253 F.3d 176 (3d Cir. 2001) ............................................................ 42

*United States ex rel. Integra Med Analytics, LLC v. Baylor Scott & White Health*,
  816 F. App'x 892 (5th Cir. 2020) (per curiam) ............................... 30

*United States ex rel. Johnson v. Kaner Med. Grp., P.A.*,
  641 F. App'x 391 (5th Cir. 2016) (per curiam) ............................... 45

*Josey v. Impulse Dynamics (USA) Inc.*,
  371 F. Supp. 3d 603 (D. Ariz. 2019) .......................................... 46, 47

*In re Katrina Canal Breaches Litig.*,
  495 F.3d 191 (5th Cir. 2007) ........................................................... 17

*United States ex rel. King v. Solvay Pharms., Inc.*,
  871 F.3d 318 (5th Cir. 2017) (per curiam) .......................... 30, 32, 36

*United States ex rel. Ligai v. ETS-Lindgren Inc.*,
  2014 WL 4649885 (S.D. Tex. Sept. 16, 2014), *aff'd*, 611 F. App'x
  219 (5th Cir. 2015) ........................................................... 46

*United States ex rel. Longhi v. United States*,
  575 F.3d 458 (5th Cir. 2009) ....................................... 30-31

*United States ex rel. McLain v. Fluor Enters., Inc.*,
  681 F. App'x 355 (5th Cir. 2017) (per curiam)................. 32

*Melchior v. Apple Homecare Med. Supply, Inc.*,
  2018 WL 1876287 (W.D. Tex. Jan. 8, 2018)..................... 45

*Miniex v. Houston Hous. Auth.*,
  400 F. Supp. 3d 620 (S.D. Tex. 2019).............................. 49

*United States ex rel. Montcrief v. Peripheral Vascular Assocs., P.A.*,
  --- F.4th ----, 2025 WL 939890 (5th Cir. Mar. 28, 2025) ................. 35

*Nichols v. Baylor Research Inst.*,
  2020 WL 1158456 (N.D. Tex. Mar. 10, 2020)................... 49

*United States ex rel. Nunnally v. W. Calcasieu Cameron Hosp.*,
  519 F. App'x 890 (5th Cir. 2013) (per curiam) ................ 30

*In re Parkcentral Glob. Litig.*,
  884 F. Supp. 2d 464 (N.D. Tex. 2012)......................... 34-35

*United States ex rel. Patel v. Catholic Health Initiatives*,
  792 F. App'x 296 (5th Cir. 2019) (per curiam)................ 32

*United States ex rel. Patton v. Shaw Servs., L.L.C.*,
  418 F. App'x 366 (5th Cir. 2011) (per curiam) .........................*passim*

*United States ex rel. Polansky v. Executive Health Resources, Inc.*,
  599 U.S. 419 (2023) ...................................................*passim*

*United States ex rel. Porter v. Magnolia Health Plan, Inc.*,
  810 F. App'x 237 (5th Cir. 2020) ...........................30, 33, 34

*United States ex rel. Reddell v. DynCorp Int'l, LLC*,
   2019 WL 12875471 (E.D. Tex. Mar. 20, 2019) ........................................... 45, 46

*United States ex rel. Riley v. St. Luke's Episcopal Hosp.*,
   355 F.3d 370 (5th Cir. 2004) ................................................................. 37

*Robertson v. Bell Helicopter Textron, Inc.*,
   32 F.3d 948 (5th Cir. 1994) ..........................................................*passim*

*United States ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*,
   472 F.3d 702 (10th Cir. 2006) ............................................... 36, 37, 39

*Sinclar v. Petco Animal Supplies Stores, Inc.*,
   581 F. App'x 369 (5th Cir. 2014) (per curiam) ................................... 44

*United States ex rel. Steury v. Cardinal Health, Inc.*,
   625 F.3d 262 (5th Cir. 2010) ................................................................. 31

*Thomas v. ITT Educ. Servs., Inc.*,
   517 F. App'x 259 (5th Cir. 2013) (per curiam,
   unpublished table) ........................................................................*passim*

*United States ex rel. Toledo v. HCA Holdings, Inc.*,
   2023 WL 2823899 (5th Cir. Apr. 7, 2023) (per curiam) ................ 42, 46, 47, 48

*United States v. Ogle*,
   415 F.3d 382 (5th Cir. 2005) (per curiam) .......................................40

*Universal Health Servs. Inc. v. United States ex rel. Escobar*,
   579 U.S. 176 (2016) .........................................................31, 32, 33, 43

*Vanderlan v. United States*,
   --- F.4th ----, 2025 WL 1143390 (5th Cir. Apr. 18, 2025) ................................29

**Statutes**

31 U.S.C. § 3729 .................................................................................*passim*

31 U.S.C. § 3730 .................................................................................*passim*

TEX. HEALTH & SAFETY CODE § 161.134 ..................................................40

## Rules

FED. R. APP. P. 28 ..............................................................................40

FED. R. CIV. P. 9(b) ............................................................ 29, 30, 34, 39

FED. R. CIV. P. 12(b)(6) ....................................................................*passim*

## ABBREVIATIONS

"Relator" means Appellant Brook Jackson.

The "Government" means the United States of America.

"Ventavia" means Appellee Ventavia Research Group, L.L.C.

"Pfizer" means Pfizer, Inc., which was a defendant in the litigation below but is not a party to this appeal.

"ICON" means ICON plc, which was a defendant in the litigation below but is not a party to this appeal.

"FCA" means the False Claims Act, 31 U.S.C. § 3729 *et seq.*

References to *Appellant's Opening Brief* shall be in the form of (Relator Br. [pg#]).

## STATEMENT OF ISSUES PRESENTED

1.    Did the district court properly dismiss all of the FCA claims after the Government—the real party in interest—moved to intervene and voluntarily dismiss those claims?

    a.    Alternatively, should this Court affirm the dismissal on any other asserted grounds under Rule 12(b)(6), including:

        i.    Relator's failure to allege that any defendant submitted materially false claims for government payment; and

        ii.    Relator's failure to allege that Ventavia itself violated the FCA despite not receiving any government funds?

2.    Did the district court properly dismiss Relator's claims for retaliation against Ventavia because, among other things, she was not engaged in protected activity under the FCA at the time of her firing and Ventavia was not aware of any such protected activity?

## INTRODUCTION

The False Claims Act, 31 U.S.C. § 3729 *et seq.* (FCA), is concerned about false claims to get money from the Government. As part of its enforcement scheme, the FCA permits private parties (called *qui tam* relators) to file suit on behalf of the United States. *See United States ex rel. Polansky v. Executive Health Resources, Inc.*, 599 U.S. 419, 424-25 (2023). But the Government is always the real party in any such suit—the alleged victim. And the FCA gives the Government broad discretion to take over the litigation or dismiss it entirely despite the relator's objection.

Here, the Government did not exercise that discretion initially. It declined to expend its own resources pursuing Relator's theories about fraud related to Pfizer's COVID-19 vaccine and, as the Government often does, allowed Relator to proceed on her own. But after she spent years making increasingly extreme and unsupported allegations about Pfizer's vaccine—and about the Government's allegedly complicit decisions to approve and purchase it—the Government stepped in and exercised its statutory prerogative to dismiss this meritless suit. The district court properly found that decision was entitled to great deference under the text and structure of the FCA and a recent Supreme Court case (*Polansky*) that addressed this voluntary dismissal authority. So, the district court entered an order dismissing all FCA claims with prejudice. And there were many other reasons to reach the same result.

In this brief, Ventavia will not belabor the Government's arguments about why its dismissal decision was well within its statutory discretion and thus properly honored by the district court. Ventavia assumes the Government will ably address those issues in its brief. While there is no reason for this Court to go any further in affirming the dismissal of Relator's FCA claims, Ventavia will address a few of the clearest alternative grounds for affirmance on the merits. And Ventavia will address, as only it can, the dismissal of the FCA retaliation claim brought against it. In short, the court properly dismissed that claim as well because Relator did not sufficiently allege that she was engaged in protected activity under the FCA or that Ventavia knew it, as this Court has required in case after case rejecting FCA retaliation claims.

Affirmance is required for all, or any, of those reasons.

## STATEMENT OF THE CASE

### A.     Relator briefly worked for Ventavia while it operated three test sites in the clinical trial for Pfizer's COVID vaccine.

This case arises out of 18 days when Relator worked for Ventavia during the clinical trial to test Pfizer's COVID-19 vaccine. (*See* ROA.2126, 3679, 4936.)[1] When the pandemic emerged in early 2020, leaders across the world scrambled to combat

---

[1] Because this case was dismissed at the Rule 12(b)(6) stage, many of the background facts below are drawn from the allegations in Relator's complaint(s) and are taken as true for purposes of this proceeding (even though many of them are not). *See, e.g.*, *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007).

it by any possible means. The United States Government launched Operation Warp Speed, a joint initiative led by the Department of Health and Human Services and Department of Defense ("DoD") aimed at accelerating the private development of a vaccine. (ROA.2122, 3626.) This initiative charged the world's foremost medical experts, pharmaceutical companies, and clinical trial specialists with developing a safe, effective vaccine to a novel, deadly disease in six months. (ROA.2122, 3626.)

Pfizer and others answered the call and quickly identified promising vaccines. These private companies then turned to clinical trial specialists to test those vaccines in privately funded clinical trials. (*See* ROA.1354, 2124, 3618.) Pfizer hired ICON plc, an Irish clinical research organization, to oversee more than 160 testing sites for the clinical trial. (ROA.2123, 3621; Relator Br. 18.) Ventavia, a leading clinical research firm based in Texas, operated three of those sites. (ROA.3621, 3625.) Of the roughly 44,000 patients who participated in Phase 3 of Pfizer's clinical trial, Relator alleged that Ventavia enrolled 1,500 of them (roughly 3%), though the real number (1,126) is lower than that. (*See* ROA.1799, 2003-04, 2124, 3621, 3655.)

Ventavia hired many new employees to handle the additional work related to the clinical trials. Relator was one of them. (*See* ROA.3679, 4936.) From the outset, though, it was clear she came with an agenda. She secretly recorded conversations with co-workers and supervisors. (*E.g.*, ROA.3726.) She accessed protected areas of

the testing facility after hours, taking pictures and documents. (ROA.3681-82, 4937, 4938-39.) She violated company policies, failed to complete required training on the trial protocol, disregarded patient privacy, and displayed an alarming level of disrespect towards the company, its patients, and its employees. All of that led to Ventavia firing her for cause after 18 days on the job. (*See* ROA.3687.)

The clinical trial moved on and the data collected from tens of thousands of participants showed that Pfizer's vaccine was more than 90% effective at preventing COVID-19, with a favorable safety profile. (ROA.2003-04, 2124, 4939.) The U.S. Food & Drug Administration ("FDA") granted emergency use authorization for the vaccine in December 2020. (ROA.2004, 2125, 4939.) Soon after, the DoD started buying the vaccine under a "Project Agreement" with Pfizer and giving it to people free of charge. (*See* ROA.2125, 3623, 3640, 4936.) The related "Statement of Work" provided that the Government would buy 100 million doses of the vaccine if Pfizer secured FDA emergency use approval. (ROA.2002-03, 3618-19, 4936.)

## B.   Relator filed this suit claiming Pfizer's vaccine was a fraud; the Government declined to join the suit.

Despite working for Ventavia for less than three weeks, Relator claims she saw proof that the entire vaccine and clinical trial were fraudulent. (*See* Relator Br. 17; ROA.3623.) Relator filed this suit on behalf of the United States alleging violations of the FCA. (ROA.26-29, 666-70.) Relator sued Pfizer, ICON, and Ventavia, but

19

Pfizer appeared to be her focus. (*See* ROA.676-77, 3620-21.) Relator ultimately alleged, in short, that Pfizer "defrauded the American people of billions of taxpayer dollars" because it knew it could not develop a safe and effective COVID-19 vaccine; that it falsified clinical trial data to get FDA approval; that it tricked the Government into approving an ineffective "gene therapy" that does not stop COVID-19 and harms recipients; and that no vaccine was ever actually needed because alternative treatments for COVID-19 already existed. (*See, e.g.*, ROA.3616-20.)

As for Ventavia, Relator said she saw its employees repeatedly violate Pfizer's clinical trial protocol—instructions that Pfizer developed for clinical investigators conducting the trial (*see* ROA.1349, 1355, 3850)—alleging among other things that they failed to properly give or record pregnancy tests, failed to obtain or timely record patients' informed consent or vital signs, allowed the so-called "unblinding" of patients and staff, tested friends and family, and failed to properly exercise temperature controls. (*See* ROA.3656-75, 4936-37.) Relator said she reported these and other alleged "clinical trial protocol and FDA regulatory violations" to her supervisors. (ROA.3679.) Relator now claims she was fired because of those internal reports. So, in her complaints, she asserted a claim for retaliation against Ventavia under the FCA's retaliation provision, 31 U.S.C. § 3730(h). (ROA.738, 3703.)

When a *qui tam* relator files a suit like this on behalf of the Government, the FCA requires it to be filed under seal initially so the Government has an opportunity to investigate and decide whether it wants to intervene and take over the litigation. *See* 31 U.S.C. § 3730(b)(2). Here, the Government declined to intervene initially, which meant it was not willing to invest its own resources pursuing the case; Relator would proceed on her own. (*See* ROA.654.) But the Government remained the real party in interest—because the asserted injury in any FCA action "is exclusively to the Government." *See Polansky*, 599 U.S. at 424-25.

### C. Defendants moved to dismiss, and the Government filed a statement supporting dismissal; the district court dismissed the complaint in full for failure to state a claim.

After the case was unsealed, all three defendants moved to dismiss under Rule 12(b)(6). (ROA.1342, 1721, 1778.) Their motions outlined several overlapping but independent reasons why Relator had not stated any viable claim for relief against anyone. Most prominently, defendants explained that even if Relator's allegations about compliance with the trial protocol were accurate (they weren't), she still had not alleged viable FCA claims because (i) she had not alleged any false claims for government payment, as required for FCA liability (*see* ROA.1366, 1791), and (ii) she had certainly not alleged materiality, another essential element that asks whether the alleged fraud actually made a difference to the defendant's receipt of government

funds. (ROA.1369, 1795.) Relator did not allege materiality, and could never do so, because the Government knew all about the alleged violations of the clinical trial protocol (especially given Relator's public promotion of her theories) and had never wavered in its approval and purchase of Pfizer's vaccine. (*See* ROA.1795-1801.)

After the motions were briefed, the Government filed a "Statement of Interest Supporting Dismissal." (ROA.2000.) Though the Government would be the main beneficiary of any monetary recovery in this case, the Statement of Interest made clear its view that there should be *no such recovery*. It explained that Relator had not sufficiently alleged any false or misleading claims for government payment because, among other things, she never alleged the so-called violations of the trial protocol at Ventavia sites "resulted in FDA receiving fabricated, inaccurate, or misleading data about the safety or efficacy of the vaccine." (ROA.2010.) Plus, even if Ventavia's safety and efficacy data had been unreliable, the Government explained that still would not have made a difference to its approval decisions—because "the complaint alleges that Ventavia enrolled only about 3 percent" of the clinical trial participants. (*See* ROA.2011.) In response, Relator tried to explain why the Government's views should not be relevant to whether the Government was defrauded. (ROA.2021.)

After hearing oral arguments for more than three hours on the motions to dismiss (*see* ROA.4967), the district court dismissed Relator's case for failure to state

a claim. (ROA.2121.) The court held, among other things, that Relator had not sufficiently alleged false claims for government payment; had not sufficiently alleged materiality in light of the Government's continued approval of and payment for the vaccine; and had not alleged that she engaged in the kind of protected activity that is required to support an FCA retaliation claim. (*See* ROA.2152, 2162, 2168.)

That order was followed by a procedural mess: Relator filed a defective motion for leave to amend, followed by a notice of appeal, followed by a motion asking the district court to "reinstate" the defective motion for leave, followed by a motion to stay the initial appeal. (*See* ROA.2169, 2172, 2877.) After this Court granted a stay, the district court gave Relator one more opportunity to file an amended complaint, and Relator dismissed the initial appeal. (ROA.2878, 2903.)

### D. When Relator amended to re-assert the same misguided theories, the Government opted to intervene and dismiss the claims asserted on its behalf.

Relator later filed her Second Amended Complaint, the live complaint in this appeal. (ROA.3612.) Despite getting a roadmap in the initial dismissal decision, the amendment did not cure any of the defects that led to dismissal. If anything, Relator just amped up the rhetoric in her claims about the so-called science related to the vaccine and her criticism of Pfizer and the Government for their roles in developing, testing, and approving the vaccine. (*E.g.,* ROA.3616-20.)

Defendants moved to dismiss again on many of the same grounds as before. (ROA.4315, 4348, 4368.) The Government weighed in again too. But rather than merely reprising its statement supporting dismissal, the Government chose a more direct path—by exercising its statutory prerogative to dismiss the case outright. (ROA.4520.) In accordance with a recent Supreme Court case unpacking this tool (*Polansky*), the Government explained that it wanted to dismiss the FCA claims on its behalf because, in essence, "[t]he United States should not be required to expend resources on a case that is inconsistent with its public health policy." (*See* ROA.4526-27.) Even allowing Relator to continue the case on her own would create unacceptable "discovery and litigation obligations," according to the filing, because it would "impose a significant burden on FDA, HHS, and DOJ." (*See* ROA.4527.)

Relator objected to the Government's dismissal decision and filed hundreds of pages of material to support her views about the vaccine. (ROA.4558-4886.) She argued, as relators often do, that the Government was violating her constitutional rights by dismissing the claims for "[s]uspected unstated purposes—to discourage industry whistleblowers, suppress the truth about vaccine injuries, protect corporate partners from being held accountable for fraud and cover up executive complicity." (*See* ROA.4564-65.) The FCA contemplates that a relator might be displeased with such a voluntary dismissal but allows the Government to dismiss "*notwithstanding*

*the objections of the person initiating the action* if the person has been notified by the Government of the filing of the motion and the court has provided the person with an opportunity for a hearing on the motion." 31 U.S.C. § 3730(c)(2)(A) (emphasis added). The district court held a hearing on the Government's motion on May 1, 2024. (*See* ROA.5094.) At the same time, the court allowed oral argument on the defendants' second round of substantive dismissal motions. (ROA.5170.)

The court ultimately determined it did not need to reach the merits the second time around because of the Government's voluntary dismissal. (ROA.4935.) After reviewing the recent guidance from *Polansky* and its progeny, the court concluded that the Government had offered "good cause" to intervene after declining initially (ROA.4941-47); that Relator's constitutional objections had no merit (ROA.4948-49); and that the Government has broad discretion to voluntarily dismiss the claims brought on its behalf (ROA.4950-53). The court therefore dismissed all of Relator's substantive FCA claims with prejudice. (ROA.4953.)

Because that disposed of all claims against Pfizer and ICON, the court found that their motions to dismiss were moot. (ROA.4953.) However, it concluded the Government's voluntary dismissal did not automatically eliminate the retaliation claims against Ventavia. (ROA.4953.) So, the court went on to address the merits of those claims. And it held, as it did in the first dismissal order, that Relator had not

stated a claim for FCA retaliation because she was not engaged in protected activity at the time of her firing—and had not improved those allegations in her amended complaint—and also because Ventavia did not know that she was engaged in such protected activity. (ROA.4955-56.) The court also dismissed Relator's state-law retaliation claim on supplemental jurisdiction grounds. (ROA.4957-58.)

Relator then filed this appeal. (ROA.4960.) Though she purports to challenge the district court's order in full, she has not made Pfizer or ICON parties to the appeal. (*See* Relator Br. 2-3.) The only appellees are Ventavia and the Government.

## SUMMARY OF THE ARGUMENT

The district court was right to grant a take-nothing judgment on Relator's meritless claims. Affirmance is required for several reasons.

On the alleged violations of the FCA, there is no need to look further than the Government's decision to voluntarily dismiss these claims brought on its behalf. The Government will surely address these issues in its brief, and Ventavia will not belabor them here—suffice it to say the Government's decision was well within its statutory discretion under *Polansky* and the FCA. There was, and is, no basis for a court to override it. Affirmance is required on the substantive claims for this reason alone.

Yet there were multiple other grounds the court could have used to dismiss the claims on the merits (and did, in its first order). Though the Court should never

need to reach these grounds, Ventavia will briefly address a few of the clearest alternative bases for affirmance. *First*, Relator failed to state a claim because she did not sufficiently allege any false claims for government payment—the most basic requirement of any FCA claim—and certainly did not allege materiality in light of the Government's continued approval of the vaccine despite Relator's allegations. *Second*, and at a minimum, Relator did not sufficiently allege that Ventavia itself violated the FCA because it was so far removed from any claims for government payment. Either way, Relator had no viable FCA claims. And that's all before having to wade into the specific allegations about the so-called trial-protocol violations Relator says she saw at Ventavia, which were unsupported and untrue. Simply put, Relator's claims were properly dismissed at the pleading stage.

The same is true for Relator's claim that Ventavia retaliated against her in violation of the FCA. The core allegation here was similarly false as a matter of fact: Relator was fired for violating company policy and patient confidentiality, not for raising concerns about compliance with Pfizer's trial protocol. But again, the district court did not need to reach those causation issues because Relator failed the most basic pleading requirements under the law of this Circuit. The FCA's retaliation provision applies only when a relator has engaged in protected activity by reporting concerns about government fraud, not just alleged regulatory violations. Relator only

alleged she did the latter, even after multiple chances to amend. She also failed to allege that Ventavia *knew* she had reported concerns about government fraud. Both defects are independently fatal to her retaliation claim.

Dismissal was required for all of those reasons. Affirmance is too.

## ARGUMENT

I. **The district court properly dismissed all of Relator's causes of action under the False Claims Act.**

Affirmance is first required on the dismissal of Relator's FCA claims against Ventavia (and everyone else). This Court can and should affirm that result for the reason addressed in the ruling at issue in this appeal: the Government's voluntary-dismissal decision. But, if necessary, this Court could also affirm on alternative merits grounds that the district court did not need to reach in its second order.

A. **Dismissal was proper because the Government gave good grounds to intervene and dismiss this meritless case.**

First and foremost, this Court should affirm because the district court rightly granted the Government's motion to intervene and to voluntarily dismiss all FCA claims under 31 U.S.C. § 3730(c)(2)(A). (ROA.4953.) Because the Government is more than capable of defending its decision—and in the interest of not overloading the Court with redundant briefing on a straightforward issue—Ventavia will not separately brief this ground. It simply adopts and incorporates the arguments made by the Government below and in this appeal that support its motion to intervene and

dismiss. (*E.g.*, ROA.4520-28, 4892-97, 5100 *et seq.*) Affirmance is required on the FCA claims for this reason alone. *See Vanderlan v. United States*, --- F. 4th ----, 2025 WL 1143390, at *6 (5th Cir. Apr. 18, 2025). The Court need not go any further.

### B. Dismissal also would have been proper under Rules 12(b)(6) and 9(b) because Relator failed to state valid FCA claims against Ventavia or anyone else.

In any event, there are plenty of other grounds to affirm the dismissal of the FCA claims on the merits, for failure to state a claim. This Court can and often does "affirm on grounds other than those relied upon by the district court when the record contains an adequate and independent basis for that result." *E.g.*, *Britt v. Grocers Supply Co.*, 978 F.2d 1441, 1449 (5th Cir. 1992); *see also Gilbert v. Donahoe*, 751 F.3d 303, 311 (5th Cir. 2014) ("Under our precedent, we may 'affirm on any ground supported by the record, including one not reached by the district court.'").

Here, even if the Government had not voluntarily dismissed the FCA claims, the district court could have dismissed them under Rules 12(b)(6) and 9(b). It already did so once. (ROA.2121.) And the final amended complaint did not cure the defects addressed in that ruling (or any other defect raised in the motions to dismiss). (*See* ROA.4320-44, 4368-79.) The district court did not need to reach those issues in its second order because of the voluntary dismissal, and this Court should not need to either. But in the event the merits ever become relevant, Ventavia will briefly address

a few of the clearest alternative grounds for affirmance. There is simply no reason for this misguided litigation to ever go back to the district court.

These issues are governed by the familiar motion-to-dismiss standards. In addition to the basic pleading requirements of *Twombly* and *Iqbal*, FCA claims are subject to the heightened particularity standards of Federal Rule of Civil Procedure 9(b). *E.g.*, *United States ex rel. Nunnally v. W. Calcasieu Cameron Hosp.*, 519 F. App'x 890, 894 (5th Cir. 2013) (per curiam). (*See also* ROA.1790 (citing cases and outlining legal standards).) FCA relators must specifically allege the "who, what, when, and where" of the alleged false claims. *United States ex rel. Integra Med Analytics, LLC v. Baylor Scott & White Health*, 816 F. App'x 892, 896-97 (5th Cir. 2020) (per curiam). And this Court applies Rule 9(b) to FCA claims "with bite and without apology." *United States ex rel. Porter v. Magnolia Health Plan, Inc.*, 810 F. App'x 237, 240 (5th Cir. 2020). Here, Relator failed to meet those standards in several independently fatal respects.

<u>Relator did not allege any materially false claim—by anyone.</u>

Proof of a "false claim against the government is the '*sine qua non*' of liability under the FCA." *United States ex rel. King v. Solvay Pharms., Inc.*, 871 F.3d 318, 326 (5th Cir. 2017) (per curiam). That is because the FCA attaches liability not to the underlying misconduct, but to the *claim* for government payment. *United States ex*

*rel. Longhi v. United States*, 575 F.3d 458, 467 (5th Cir. 2009). So, it's not enough to just allege the defendant violated a government contract or regulation. *United States ex rel. Steury v. Cardinal Health, Inc.*, 625 F.3d 262, 268 (5th Cir. 2010). As relevant here, FCA liability only exists where the defendant submits a claim for government payment and falsely certifies compliance with contract or regulatory requirements, knowing that such non-compliance rendered its claim materially false. *See Universal Health Servs. Inc. v. United States ex rel. Escobar*, 579 U.S. 176, 186-87 (2016).

Relator failed to sufficiently allege any such false claim in the first place. The only claims for government payment here were the invoices that Pfizer sent to the DoD seeking payment for vaccine doses. (*See* ROA.2144, 3619.) But as the district court correctly found, Pfizer made no false statements in submitting those invoices. (*See* ROA.2144-47, 2150, 2152.) It was entitled to payment under the terms of the contract. (ROA.2142-44.) And Pfizer was not required to (and did not) make express or implied certifications about the conduct of the clinical trial in its invoices, as Relator claimed—it certainly made no false certifications. (*See* ROA.2144-47.)

Nor did Relator support her theory that Pfizer's claims were rendered false because it fraudulently induced the FDA's approval of the vaccine. (*See* ROA.3689-90, 3698-99.) Even if that were a viable theory (a question for another day), Relator did not sufficiently allege it because she offered no fact allegations—only supposition

31

and rhetoric—for her assertions that Pfizer fraudulently induced FDA approval by submitting false data. (*See* ROA.3695, 3698-99, 4335-37.) Ventavia's data did not support this theory because, as the Government emphasized, Relator did not allege how the so-called protocol violations undermined any of its safety and efficacy data and because it was too small of a sample in any event. (ROA.2009-11.) In short, dismissal was and is required because Relator did not allege the most basic element of a false claim for government payment. *See Solvay*, 871 F.3d at 326.

Yet even if Relator had cleared the false-claim hurdle, dismissal was still required (and affirmance is too) because she could not satisfy the FCA's materiality element. *See United States ex rel. McLain v. Fluor Enters., Inc.*, 681 F. App'x 355, 360 (5th Cir. 2017) (per curiam) (FCA cases "often hinge[] on whether the false claim was 'material'"). This element asks whether the false claims actually affected the Government's payment decision—in other words, would it have still paid the claim if it knew the challenged statements were incorrect? *See United States ex rel. Patel v. Catholic Health Initiatives*, 792 F. App'x 296, 301 (5th Cir. 2019) (per curiam).

The Supreme Court has explained that this element "is demanding" and is not satisfied by "garden-variety breaches of contract or regulatory violations." *See Escobar*, 579 U.S. at 194. Materiality looks to the statement's "effect on the likely or actual behavior" of the Government. *United States ex rel. Harman v. Trinity Indus.*

*Inc.*, 872 F.3d 645, 661 (5th Cir. 2017). "[I]f the Government pays a particular claim in full despite its actual knowledge that certain requirements were violated, that is very strong evidence that those requirements are not material." *Escobar*, 579 U.S. at 195; *see also Porter*, 810 F. App'x at 240-42.

Relator failed on materiality as well, as the district court held in its first order, because the alleged violations of the clinical trial protocol had no effect on the Government's decisions to approve and purchase Pfizer's vaccine. (*See* ROA.2152-62.) That much is clear because the Government said just that and because it continued to purchase the vaccine long after learning about the alleged violations:

- Initially, following the public disclosure of Relator's allegations in an online article (and other private disclosures to the Government), the FDA issued a statement confirming it "has full confidence in the data" that were used to approve Pfizer's vaccine. (*See* ROA.1361, 2005.)

- The FDA never wavered in its approval of the vaccine for emergency use and later fully approved the vaccine by granting a Biologistic License Application—again, long after getting additional data and after reviewing Relator's allegations. (ROA.1362-63, 2156, 5168-69.)

- The Government also continued to purchase the vaccine and provide it to citizens free of charge. (ROA.2156.)

- And finally, the Government itself has weighed in on this litigation to say, in effect, that it was not defrauded—first by filing a Statement of Interest in support of dismissal, then by intervening to voluntarily dismiss. (*See* ROA.2000, 4526-27.)

The facts here are similar to what this Court addressed in *Porter*, where it affirmed the dismissal of an FCA complaint on materiality grounds. *See* 810 F. App'x

at 241-42. In doing so, this Court noted that government officials "took no action" after learning about the plaintiff's fraud allegations and "continued payment and renewed [the] contract with [defendant] several times." *Id.* at 242. Based on the continued government payment, this Court held the plaintiff had not done enough to meet its "substantially increase[d]" burden to show materiality and affirmed dismissal under Rules 12(b)(6) and 9(b). *Porter*, 810 F. App'x at 242. So too here.

In fact, this case is stronger on lack of materiality—because rather than simply taking "no action" to withdraw its approval, the Government has repeatedly *taken action* to reaffirm its continued approval of the vaccine, as noted in the bullets above. Those actions are more akin to what happened in *Harman*, where the Government reviewed a relator's allegations about safety defects in highway guardrails and issued an official memorandum that the guardrail was safe and eligible for federal funds. *See Harman*, 872 F.3d at 649-51. This Court did not need to "infer[] governmental approval from continued payment" because it had explicitly stated its approval. *See id.* at 663-64. (*See also* ROA.2157.) The same is true here. So the alleged false claims were not material as a matter of law. *Harman*, 872 F.3d at 667-68.

Relator obviously disagrees with the Government's decisions and has long tried to make this case a referendum about how it managed the development and testing of the COVID-19 vaccine. (*See* ROA.1363, 1463, 1797.) Those allegations may

or may not be a valuable conversation for the public square. But they are not the basis for an FCA lawsuit—because the Government doesn't think it was defrauded. "Congress enacted the FCA to vindicate fraud on the federal government, not second guess decisions made by those empowered through the democratic process to shape public policy." *Harman*, 872 F.3d at 668-69. Though Relator is entitled to second guess her Government, that doesn't mean she is entitled to litigate claims on its behalf.[2] "When the government, at appropriate levels, repeatedly concludes that it has not been defrauded, it is not forgiving a found fraud—rather it is concluding that there was no fraud at all." *Id.* at 670. Because the same is true here, Relator's claims failed for lack of materiality.

> Relator did not allege that Ventavia itself violated the FCA.

In the alternative, and at a minimum, Relator did not sufficiently allege that Ventavia itself violated the FCA—because Ventavia had virtually no connection to the Government and thus made no false claims for government payment. Like any other plaintiff, an FCA relator must state viable claims against *every* defendant and cannot "make general allegations that lump all defendants together." *See, e.g., In re*

---

[2] This is particularly true in light of recent opinions calling into question the constitutionality of the FCA's *qui tam* device. *See, e.g., United States ex rel. Montcrief v. Peripheral Vascular Assocs., P.A.*, --- F.4th ----, 2025 WL 939890, at \*11 (5th Cir. Mar. 28, 2025) (Duncan, J., concurring).

*Parkcentral Glob. Litig.*, 884 F. Supp. 2d 464, 471 (N.D. Tex. 2012); *see also United States ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 714 (10th Cir. 2006) ("[T]he appropriate focus of th[is] inquiry is on 'the specific conduct of the person from whom the Government [or relator] seeks to collect.'").

Relator did not clear that bar as to Ventavia. It is undisputed Ventavia never submitted any claims for government payment, much less false ones. (*See* ROA.1916, 1923.) Because Ventavia did not get government funds, Relator could not allege it directly violated the FCA. *See Solvay*, 871 F.3d at 326. To hold it liable, then, Relator had to rely on some sort of causal leap—by showing that it caused Pfizer to present false claims or made or used false records or statements that caused the submission of false claims. *See* 31 U.S.C. §§ 3729(a)(1)(A), (B); *Solvay*, 871 F.3d at 328-29 (affirming summary judgment on such indirect theories for lack of causation).

Those indirect theories of FCA liability require a "sufficient nexus between [Ventavia's] conduct and the ultimate presentation of the allegedly false claim." *United States ex rel. Colquitt v. Abbott Labs.*, 2016 WL 80000, at *6 (N.D. Tex. Jan. 7, 2016). This is a proximate-causation standard that "demands more than mere passive acquiescence in the presentation of the claim" by someone else. *Id.* at *7 (citing *Sikkenga*, 472 F.3d at 714-15). Relator must instead allege some "affirmative act" by Ventavia that was a substantial factor in inducing Pfizer to submit false

36

claims. *Sikkenga*, 472 F.3d at 714-15; *see also United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 378 (5th Cir. 2004).

Relator fell well short of that standard. She did not plead any "affirmative acts" by Ventavia that induced Pfizer's alleged conduct related to the negotiation of its contract with the Government, the administration of the clinical trial, or the submission of data to the FDA—the allegations at the heart of Relator's fraudulent-inducement theory. (*E.g.,* ROA.3616-20, 3626-28, 3645-55.) At best, Relator broadly asserted that Ventavia's alleged trial-protocol violations caused the FDA to approve the Pfizer vaccine under false pretenses. (*E.g.,* ROA.3656.)[3] But among other flaws, those allegations failed because they asserted only "but for" causation, when proximate causation is required. *See Sikkenga*, 472 F.3d at 714. In other words, Relator's claims against Ventavia failed on their face because she did not even *allege* that its conduct proximately caused the FDA to approve the vaccine.

That said, she didn't sufficiently allege but-for causation either. As explained above, the FDA relied on data from roughly 44,000 trial participants. (ROA.684, 3655.) Relator says Ventavia enrolled 1,500 of them (about 3%), though the real

---

[3] Even this is overly generous, as Relator's ultimate FDA allegations focus more on the general conduct of the clinical trial than Ventavia's sites specifically. *See, e.g.,* ROA.3653-54 ("Had Pfizer not engaged in the clinical trial fraud as alleged herein, it would not have obtained an EUA based on the totality of the scientific evidence and the objective facts showing that the harm far outweighed any potential benefit.").

number is lower. (ROA.1799.) Whatever the precise percentage, the participants at Ventavia's sites were a small piece of the overall trial; Relator's "allegations only implicate a fraction of" that percentage, as the district court noted; and Relator never sufficiently alleged the Ventavia data was the deciding factor in the FDA's approval. (*See* ROA.2162.) The reality is just the opposite: as the Government explained, even if Ventavia's safety and efficacy data had been unreliable (something Relator didn't support), there was no basis to suggest "that the criteria for issuance of an EUA would not have been met without the Ventavia data" because it was such a small portion of the overall trial. (*See* ROA.2010-11.)

Relator's conclusory allegations did not overcome that fatal shortcoming. She vaguely claimed the alleged protocol violations caused the trial data to be unreliable and inadequate (*e.g.,* ROA.3655-56, 3690), but those after-the-fact lawyer arguments failed as a matter of pleading (because they were not supported by any facts), particularity (because they did not connect the dots to Ventavia's data), and basic logic (because the FDA had roughly 42,000 other data points to go on).

For those reasons, Relator did not sufficiently allege Ventavia did anything to proximately cause the FDA to approve the vaccine—and that's still a step removed from what she had to show (that Ventavia proximately caused Pfizer to make false claims). *See D'Agostino v. ev3, Inc.*, 845 F.3d 1, 7-10 (1st Cir. 2016) (affirming

dismissal of fraudulent inducement claims where relator could not establish "causal link" between misrepresentations to get FDA approval for device and submission of claims by healthcare providers). Such a "generalized daisy chain of causation" between the defendant and the alleged false claims does not meet the particularity requirements of Rule 9(b) or the legal requirements of the FCA. *See Sikkenga*, 472 F.3d at 728 n.34. (*See also* ROA.1803-04, 1735-42.)

So, if nothing else, Relator did not sufficiently allege a viable FCA claim against Ventavia itself. This Court should affirm the dismissal of Counts I-IV as to Ventavia one way or another. (*See* ROA.3698-3702.)

## II.    The district court also properly dismissed Relator's retaliation claims against Ventavia.

This Court should also affirm the dismissal of Relator's retaliation claims, which were asserted against Ventavia alone (because only Ventavia employed her). (ROA.4953-58.) In its most recent dismissal order, the district court suggested that the Government's voluntary-dismissal decision did not automatically eliminate the retaliation claims. (*See* ROA.4953.) Though that is not clear as a textual matter,[4] the Court does not need to reach that issue because the retaliation claims so clearly failed

---

[4] 31 U.S.C. § 3730(c)(2)(A) says the Government may dismiss "the action" under the circumstances addressed in Section I.A and the Government's brief. The statute does not say whether retaliation claims under § 3730(h) are included in the "action" being so dismissed. But that would be a natural way to read the text as a whole.

on the merits, as the district court held twice. (ROA.2168, 4955-56.) And that ruling must be affirmed regardless of what the Court does in Section I because the viability of an FCA retaliation claim is not tied to the underlying FCA claims.

At the outset, Relator only challenges the dismissal of her FCA retaliation claim. (*See* Relator Br. 15, 56.) In the late stages of the case below, Relator asserted an overlapping state-law claim for retaliation under Texas Health and Safety Code § 161.134. (ROA.3696-97.) The district court dismissed that claim on supplemental-jurisdiction grounds, and Relator does not appeal that ruling. (*See* ROA.4957-58; Relator Br. 56.) Relator has thus waived any objection. *See, e.g.*, *United States v. Ogle*, 415 F.3d 382, 383 (5th Cir. 2005) (per curiam) ("Our cases make it clear that an argument not raised in appellant's original brief as required by Fed. R. App. P. 28 is waived."). So, this appeal concerns only the FCA retaliation claim.

The text of the FCA's retaliation provision, 31 U.S.C. § 3730(h), says that:

> Any employee, contractor, or agent shall be entitled to all relief necessary to make that employee, contractor, or agent whole, if that employee, contractor, or agent is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee, contractor, agent or associated others in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter.

To state a claim for relief under that provision, Relator had to plead facts showing that: (1) she was engaged in "protected activity" under the FCA when she

was fired, (2) Ventavia knew she was engaged in protected activity, and (3) she was fired because of the protected activity. *See Thomas v. ITT Educ. Servs., Inc.*, 517 F. App'x 259, 262 (5th Cir. 2013) (per curiam, unpublished table); *United States ex rel. Patton v. Shaw Servs., L.L.C.*, 418 F. App'x 366, 371-72 & n.5 (5th Cir. 2011) (per curiam); *Robertson v. Bell Helicopter Textron, Inc.*, 32 F.3d 948, 951 (5th Cir. 1994). The district court properly held that Relator failed on the first two essential elements. That means the arguments about the third element (Relator Br. 65-67) are legally irrelevant, even if factually misguided.

### A.    Relator did not sufficiently allege she was engaged in "protected activity" under the FCA.

The district court focused mostly on the first required element, finding that Relator failed to allege any protected activity under the FCA, as this Court has defined the term, because her purported internal complaints about clinical-trial-protocol violations did not rise to the level of FCA protected activity about fraud on the government. (ROA.2166, 4955-56.) That was exactly right.

Not all internal complaints or reports about alleged misconduct are protected activity under the FCA. This Court has explained repeatedly that such complaints only qualify for FCA protection if the reports "concern false or fraudulent claims for payment submitted to the government." *See, e.g.*, *Patton,* 418 F. App'x at 372 (quotation omitted); *see also Robertson*, 32 F.3d at 950-52 (internal complaints about

bills to government were not protected activity where employee "never used the terms 'illegal,' 'unlawful,' or '*qui tam* action'"); *United States ex rel. Toledo v. HCA Holdings, Inc.*, 2023 WL 2823899, at \*3 (5th Cir. Apr. 7, 2023) (per curiam) (similar).

As this Court put it in *Patton*, "[m]ere criticism of" an employer's practices, "without any suggestion that [the employee] was attempting to expose illegality or fraud within the meaning of the FCA, does not rise to the level of protected activity." 418 F. App'x at 372. That is because "'an employer is entitled to treat a suggestion for improvement as what it purports to be rather than as a precursor to litigation.'" *Id.* (citation omitted). So, merely complaining about an "improper" practice is not FCA protected unless the report was about "defrauding the government." *See id.*: *Toledo*, 2023 WL 2823899, at \*3 ("no protected activity where plaintiff failed to use words such as *illegal*, *unlawful*, or *qui tam* in characterizing concerns"); *Thomas*, 517 F. App'x at 263 (no protected activity where employee raised "internal policy matters" and did not say the actions were fraudulent); *see also, e.g.*, *Hutchins v. Wilentz, Goldman & Spitzer*, 253 F.3d 176, 188 (3d Cir. 2001) (no protected activity if employee merely reports "regulatory violations").

Relator's alleged complaints to Ventavia were on the wrong side of that line, as the district court held. (ROA.2165-66, 4955-56.) At best, Relator alleged that she complained about Ventavia's so-called failures to comply with Pfizer's clinical trial

protocol or FDA regulations (*see* Relator Br. 60, 63-64; ROA.3679-3688); as the district court described it, she reported alleged "violations of trial protocol, FDA regulations, and HIPAA." (ROA.2165.) But as the court properly recognized, the FCA is not a vehicle for policing general regulatory compliance; it is concerned only with government fraud. (*See* ROA.2139, 2153.)[5] And Relator never said anything to her supervisors to suggest the alleged trial-protocol or regulatory violations resulted in false claims for government payment. So, even if Relator's allegations were all true (and they weren't), she did not allege protected activity under the FCA—because internal complaints about regulatory violations are not the same thing as complaints about government fraud. *See Patton*, 418 F. App'x at 372.

Dismissal was required here for the same reasons this Court addressed in *Patton*, where the relator alleged he was fired because he "complained repeatedly" about "fraudulent construction mistakes." 418 F. App'x at 372. The Court found those reports were not FCA protected because "the substance of his complaints" concerned unsafe or improper construction methods, not false claims for government payment. *See id.* This Court reached similar results in *Robertson* and *Thomas*, finding no retaliation where employees raised internal concerns but never

---

[5] *See also Escobar*, 579 U.S. at 194 ("The False Claims Act is not 'an all-purpose antifraud statute,' or a vehicle for punishing garden-variety breaches of contract or regulatory violations.") (citation omitted).

used terms like "illegal," "unlawful," "fraudulent," or "*qui tam* action." *See Robertson*, 32 F.3d at 951; *Thomas*, 517 F. App'x at 263. That's all true here.

Relator now tries to escape those holdings by arguing in a footnote that they were based on "post-pleading motions with an evidentiary record, not some pleading deficiency." (Relator Br. 61, n.4.) That makes no difference. Those cases set the legal standard this Court applies in deciding what qualifies as FCA protected activity. Sure, Relator didn't have to offer evidence to support her allegations at the motion-to-dismiss stage. But she did have to offer factual allegations to plausibly satisfy that standard. *See, e.g., Sinclar v. Petco Animal Supplies Stores, Inc.*, 581 F. App'x 369, 370 (5th Cir. 2014) (per curiam) (discussing plausibility standards under *Twombly*, *Iqbal*, and other authorities). She did not even do that.

In her appellate brief, Relator suggests for the first time that her complaint "shows that" she "kn[ew] these trials involved government funding." (*See* Relator Br. 62.) The complaint says nothing of the sort. That's likely why Relator offers no citation for this assertion. As the district court properly noted, a complaint cannot be amended by arguments lawyers make in briefs. (ROA.4956, citing *Energy Coal v. CITGO Petroleum Corp.*, 836 F.3d 457, 462 n.4 (5th Cir. 2016).) So, this new argument is legally irrelevant. But it is insufficient in any event because, regardless

of what Relator now claims she knew, what matters is what she reported—and she did not report any alleged false claims for government funding.

Nor can Relator avoid this Court's precedent by arguing her actions were "efforts to stop" fraud. (*See* Relator Br. 56-57.) That phrase was added to the statute in 2009 to make clear that relators do not necessarily need to be pursuing an FCA lawsuit for their activity to be protected. *See, e.g.*, *Melchior v. Apple Homecare Med. Supply, Inc.*, 2018 WL 1876287, at *3-4 (W.D. Tex. Jan. 8, 2018) (discussing cases). The amended language did not change the standards discussed above—internal reporting still must be directed to government fraud, not mere regulatory compliance. Indeed, the text of the statute still requires "efforts to stop 1 or more violations *of this subchapter*," *i.e.*, the FCA. 31 U.S.C. § 3730(h) (emphasis added). So, for example, Relator's alleged effort to "halt[] enrollment in the clinical trial" (Relator Br. 58) was not an effort to stop government fraud under the meaning of the FCA—it was, at best, an effort to stop alleged regulatory violations.

Indeed, this Court and others continue to apply those same internal-complaint standards to the amended statute. *E.g.*, *Thomas*, 517 F. App'x at 262-63; *United States ex rel. Johnson v. Kaner Med. Grp., P.A.*, 641 F. App'x 391, 395 (5th Cir. 2016) (per curiam); *United States ex rel. Reddell v. DynCorp Int'l, LLC*, 2019 WL 12875471,

at *16 (E.D. Tex. Mar. 20, 2019);[6] *United States ex rel. Ligai v. ETS-Lindgren Inc.*, 2014 WL 4649885, at *16-17 (S.D. Tex. Sept. 16, 2014), *aff'd*, 611 F. App'x 219 (5th Cir. 2015).

This Court most recently reiterated those rules in *Toledo*, 2023 WL 2823899, where it affirmed summary judgment on retaliation despite the relator saying she "engaged in numerous instances of protected conduct when she complained to various [other] employees about what she now characterizes as fraud." *Id.* at *2. Though the ultimate holding focused a bit more on the employer-knowledge element (discussed *infra*, Section II.B), the opinion noted that the relator "never used words like *fraud* or *illegal* when raising concerns," and it reiterated *Robertson*'s holding that there can be "no protected activity where plaintiff failed to use words such as *illegal*, *unlawful*, or *qui tam* in characterizing concerns." *Id.* at *3. So too here.

Rather than engaging with this Court's caselaw, Relator builds her argument around essentially one district court case from the Ninth Circuit. (Relator Br. 58, discussing *Josey v. Impulse Dynamics (USA) Inc.*, 371 F. Supp. 3d 603 (D. Ariz. 2019).)

---

[6] Relator outright mischaracterizes *Reddell* in her brief. (*See* Relator Br. 63.) The court in *Reddell* did not find that relator's conduct "likely satisfied" any retaliation standard, as Relator claims here—the court found there was no proper pleading of protected activity and dismissed the retaliation claims in full, with prejudice. 2019 WL 12875471, at *16, 18. The quote that Relator uses to suggest otherwise came from a recitation of what the relator had "aver[red]," not something the court found. *See id.* at *16. *Reddell* supports dismissal here.

That is self-evidently misguided: *Josey* has no meaning here because the controlling Circuit precedent is so clear. And *Josey* is inconsistent with that precedent. This Court has never said an internal report is protected just because the misconduct "could reasonably be linked" to an FCA violation, as *Josey* suggests. 371 F. Supp. 3d at 608. In this Court, a relator must report concerns about fraud on the government to be engaged in protected activity. *See Patton*, 418 F. App'x at 372; *Robertson*, 32 F.3d at 951; *Thomas*, 517 F. App'x at 263; *Toledo*, 2023 WL 2823899, at \*2-3. Because Relator did not allege as much, the district court properly dismissed her retaliation claim. (ROA.2166, 4955-56.) Affirmance is required for this reason alone.

## B. Relator did not sufficiently allege that Ventavia knew she was engaged in protected activity.

Yet the district court was also correct to hold that Relator's retaliation claim failed for a second, independent reason: she did not allege that Ventavia *knew* she was engaged in protected activity. (ROA.2168, 4955.) For this element, Relator must allege that Ventavia knew she was investigating government fraud or that a *qui tam* action was a distinct possibility. *See Patton*, 418 F. App'x at 372; *Robertson*, 32 F.3d at 951-52. Relator did neither. In fact, despite having multiple chances to amend with specific guidance about the flaws in her complaint, Relator never made even a conclusory allegation that Ventavia knew she was engaged in protected activity. (*See* ROA.3696.) She certainly did not offer the necessary factual allegations to survive

dismissal on this element, as the district court properly held. (ROA.2168.)[7]

Relator now says "magic words" aren't necessary to notify an employer about FCA protected activity. (*See* Relator Br. 65.) But that's not what this Court says. *See, e.g., Toledo*, 2023 WL 2823899, at *3; *Robertson*, 32 F.3d at 951. And there is a core substantive concern at the heart of this requirement. This Court explained in *Patton* that if there is no clear report about government fraud, as opposed to just an internal complaint about misconduct, an employer "could not possess the retaliatory intent necessary to establish a violation of § 3730(h)." *See* 418 F. App'x at 372 (quotations omitted). That is especially true when the relator is making internal complaints about matters that fall within their ordinary job responsibilities, as Relator claims here (*e.g.*, Relator Br. 16-17). *See Toledo*, 2023 WL 2823899, at *3 ("absent use of terms such as *illegal, unlawful,* or *false-claims investigation*, actions taken consistent with job duties failed to alert employer to protected activity") (citation omitted).

Relator's arguments about her own subjective motivations miss the point for similar reasons. (*See* Relator Br. 60-61.) While *Thomas* suggests that matters to some extent, *see* 517 F. App'x at 262, it is not sufficient on its own. Whether or not a relator believed there was government fraud, the question is whether she *reported* it to her

---

[7] Nor could Relator fix this defect with a few conclusory assertions in her briefing below (*e.g.,* ROA.4436) because, again, a complaint cannot be amended by the briefs in opposition to dismissal. (ROA.4956, citing *Energy Coal*, 836 F.3d at 462 n.4.)

employer; if not, there is no actionable retaliation as a matter of law. *Patton*, 418 F. App'x at 372. And Relator did not satisfy this element.

That is the big difference from *Nichols* and *Miniex*, two other district court cases Relator leans on in her brief. (Relator Br. 59, 62.) Even assuming that those non-binding decisions properly found certain retaliation claims to be viable, it was because those relators actually reported concerns about government fraud to their employers, as this Court requires. *See Nichols v. Baylor Research Inst.*, 2020 WL 1158456, at *7 (N.D. Tex. Mar. 10, 2020); *Miniex v. Houston Hous. Auth.*, 400 F. Supp. 3d 620, 641-42 (S.D. Tex. 2019). Relator made no such allegations. So her unstated subjective motivations are legally irrelevant.

Nor is there any merit to Relator's new claim that "Ventavia anticipated [she] would report its fraudulent conduct to authorities or pursue False Claims Act litigation." (*See* Relator Br. 63-64.) Relator offers no caselaw to suggest this element turns on an employer's subjective interpretation of the employee's activities, and again, the law is otherwise—the employer must be placed on notice by a report about government fraud. *See Patton*, 418 F. App'x at 372. But even under Relator's watered-down standard, she still has no factual allegations to support her newfound (untrue) claim that Ventavia anticipated an FCA suit. This is nothing more than another unsupported lawyer argument, so it fails for the reasons discussed *supra*, n.7.

Finally, Relator cannot satisfy the employer-knowledge element with some purposefully vague references to a report she says she made to the FDA. (*See* Relator Br. 17, 60, 64, 65.) That is true for a very simple reason: Relator never alleged that Ventavia knew about her purported call to the FDA; she simply says she called the FDA "[t]he day…she was fired." (*Id.* at 64; ROA.3687.) That is meaningless. Ventavia did not know about this call, which was allegedly made hours before it fired her, and Relator has never argued otherwise. In her brief, Relator vaguely claims that Ventavia was "aware of…Jackson's intentions to report those violations" and says she had a "reasonable expectation [it] knew of her FDA complaint." (Relator Br. 64, 65.) But again, these newfound (untrue) claims were not alleged in the complaint, much less supported by well-pled facts, so they are not legally relevant. (*Supra* n.7.)

As it was in *Patton*, even "assuming that [s]he contacted…authorities prior to [her] termination," Relator has not shown "'[her] complaints to the governmental entities were known to defendant.'" *See* 418 F. App'x at 372 (citation omitted). That means the so-called FDA report does not move the needle on Ventavia's knowledge of protected activity.[8] Affirmance is required on this ground as well.

---

[8] The alleged FDA report does not even qualify as protected activity in the first place—because her allegations again suggested she was reporting regulatory violations at best, not fraud on the government. (ROA.3687 ("The following morning, Relator called the FDA's hotline to report *the clinical trial protocol violations and patient safety concerns* she witnessed." (emphasis added).)

## CONCLUSION AND PRAYER

For all those reasons, Ventavia respectfully asks this Court to affirm the take-nothing judgment and the dismissal of Relator's claims against it. Ventavia also requests all other relief to which it is entitled.

Dated: April 28, 2025                    Respectfully submitted,


*/s/ Andrew W. Guthrie*
Stacy L. Brainin
   S*tacy.Brainin@haynesboone.com*
   Texas Bar No. 02863075
Andrew W. Guthrie
   *Andrew.Guthrie@haynesboone.com*
   Texas Bar No. 24078606
**HAYNES AND BOONE, LLP**
2801 N. Harwood St., Suite 2300
Dallas, Texas 75201
Telephone: (214) 651-5000
Facsimile: (214) 651-5940

**Attorneys for Defendant - Appellee**
**Ventavia Research Group, LLC**

## CERTIFICATE OF SERVICE

I hereby certify that on April 28, 2025, I electronically transmitted this Brief of Appellee to the Clerk of the Court of the Fifth Circuit Court of Appeals using the ECF System of the Court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

*/s/ Andrew W. Guthrie*
Andrew W. Guthrie

## ECF CERTIFICATION

I hereby certify that (i) required privacy redactions have been made pursuant to 5TH CIR. R. 25.2.13; (ii) the electronic submission is an exact copy of the paper document pursuant to 5TH CIR. R. 25.2.1; (iii) the document has been scanned for viruses using the most recent version of Windows Defender and is free of viruses; and (iv) the document will be maintained in paper form for three years after the mandate or order closing the case issues, per 5TH CIR. R. 25.2.9 and 5TH CIR. ECF Filing Standards E(2).

*/s/ Andrew W. Guthrie*
Andrew W. Guthrie

## CERTIFICATE OF COMPLIANCE

I hereby certify that:

1.    This brief complies with the word limit of FED. R. APP. P. 32(a)(7)(B) because this document contains 8,813 words on pages 15-51, excluding the parts of the brief exempted by FED. R. APP. P. 32(f), and 5th Cir. R. 32.2.

2.    This brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type-style requirements of FED. R. APP. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 in 14-point Equity A font.

Dated: April 28, 2025          */s/ Andrew W. Guthrie*
Andrew W. Guthrie